KOKO WLEH WILSON
GEO AURORA DETENTION CENTER
3130 NORTH OAKLAND STREET
AURORA, COLORADO 80010
A088319144



DETAINED

# UNITED STATES DISTRICT COURT
## FOR THE OHIO SOUTHERN DISTRICT

| | |
|---|---|
| **KOKO WLEH WILSON**<br>**Petitioner, Pro Se,**<br><br>v.<br><br>**WILLIAM P. BARR** ,Attorney General of the United States; **KIRSTJEN M. NIELSEN**, Secretary of the U.S. Department of Homeland Security; **RONALD VITIELLO**, Director of U.S. Immigration and Customs Enforcement; **JEFFREY D. LYNCH**, Denver Field Office Director for Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; **JOHNNY CHOATE**, Warden, Denver Contract Detention Facility<br><br>**Respondents.** | **Case No.**<br>Judge Sargus  2  1 9 C V 2 6 6 6<br>MAGISTRATÉ JUDGE JOLSON<br><br>**PETITION FOR WRIT OF**<br><br>**HABEAS CORPUS PURSUANT TO**<br><br>**28 U.S.C.§ 2241** |

Petitioner respectfully petitions this Honorable Court for writ of habeas corpus to remedy Petitioner's unlawful detention by Respondents, as follows:

## INTRODUCTION

1. Petitioner is currently detained by Immigration and Customs Enforcement (ICE) at the Aurora detention facility pending removal proceedings.

2. Petitioner has been detained in immigration custody for over 11 months, Petitioners last bond hearing was on July 30, 2018 and since then no neutral decision maker---whether a federal judge or an immigration judge--- has conducted a hearing to re-determine whether this lengthy incaceration is warranted based on danger or flight risk, the only two permissible bases for immigration detention prior to entry of an executable removal order.

3. Petitioner's prolonged detention without a custody redetermination hearing on danger and flight risk violates the Due Process Clause of the Fifth Amendment and the Eighth Amendment's Excessive Bail Clause.

4. Petitioner therefore respectfully requests that this Court issue a writ of habeas corpus, determine that Petitioner's detention is not justified because the government has not established by clear and convincing evidence that Petitioner presents a risk of flight or danger in light of available alternatives to detention, and order Petitioner's release, with appropriate conditions of supervision if necessary, taking into account Petitioner's ability to pay a bond.

5. In the alternative, Petitioner requests that this Court issue a writ of habeas corpus and order Petitioner's release within 30 days unless Defendants schedule a hearing before an immigration judge where: (1) to continue detention, the government must establish by clear and convincing evidence that Petitioner presents a risk of flight or danger, even after consideration of alternatives to detention that could mitigate any risk that Petitioner's release would present; and (2) if the government cannot meet its burden,

the immigration judge orders Petitioner's release on appropriate conditions of supervision, taking into account Petitioner's ability to pay a bond.

## JURISDICTION AND VENUE

6. Petitioner is detained in the custody of Respondents at Aurora detention facility.

7. Jurisdiction is proper under 28 U.S.C. §§ 1331, 2241; the Suspension Clause, U.S. Const. art. I, §2; and 5 U.S.C.§ 702.

8. Congress has preserved judicial review of challenges to prolonged immigration detention. *See Jennings v Rodriguez*, __U.S.__, 2018 WL 1054878 at *7-*9 (Feb.27, 2018) (holding that 8 U.S.C. §§ 1226(e), 12512(b)(9) do not bar review of challenges to prolonged immigration detention); *see also id*. At *44 (Breyer, J.; dissenting). ("8 U.S.C. § 1252(b)(9),....by its terms applies only with respect to review of an order of removal") (Internal quotation marks and brackets omitted).

9. Section 1252(f) (1) does not repeal this Court's authority to grant the relief Petitioner seeks because, *inter alia*, Petitioner is in removal proceedings. *See* 8 U.S.C. § 1252(f)(1) (exempting claims by "an individual alien against whom proceedings.....have been initiated"); *Reno v. Am.-Arab Anti-Discrimination Comm.*,525 U.S. 471,482 (1999) (Section 1252(f) "does not extend to individual cases").

10. If Section 1252(f)(1) did bar the relief Petitioner seeks, it would violate the Suspension Clause.

11. Even if otherwise applicable, Section 1252(f)(1) does not bar declaratory relief.

## VENUE

12. Venue is proper in this District under 28 U.S.C. § 1391 because at least one Defendant is in this District, the Petitioner was previously detained in this District, and a substantial part of the events giving rise to the claims in this action took place in this District.

## PARTIES

13. Petitioner Mr. Wilson is a non citizen currently detained by respondents pending removal proceedings.

14. Respondent Kirsten Nielsen is the Secretary of the U.S. Department of Homeland Security ("DHS"), an agency of the United States. She is responsible for the administrative of the immigration laws .8 U.S.C.§1103 (a). Secretary Nielsen is a legal custodian of Petitioner She is named in her Official capacity.

15. Respondent   WILLIIAM P. BARR is the Attorney General of the United States and the most senior official in the U.S. Department of Justice ("DOJ"). He has the authority to interpret the immigration laws and adjudicate removal cases. The Attorney General delegates this responsibility to the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the Board of immigration Appeals ("BIA"). He is named in his official capacity.

16. Respondent Jeffrey D.Lynch Denver Field Office Director responsible for the Field Office of ICE with administrative jurisdiction over petitioner's case. He is a legal custodian of petitioners and is named in his official capacity.

17. Respondent Johnny Choate, is the warden of the facility where petitioner is held. He is a legal custodian of petitioner and is named in his official capacity.

## STATEMENT OF FACTS

18. Petitioner is a noncitizen currently detained by respondents pending immigration removal proceedings. Petitioner is pursuing the following claims in removal proceedings: Cancellation of removal, Waiver of removal, 212(i), and long known remedy from deportation Gabryelsky relief. (including all claims presented, including any applications for asylum, withholding of removal; Convention against Torture; cancellation of removal; adjustment of status; Termination of proceedings; U VISA; T VISA; or any other applications).

19. Petitioner has been detained in DHS custody since July 11, 2018.

20. Petitioner has been detained by ICE for more than 10 months, after his first bond hearing in July 30, 2018 the Petitioner has not been provided a bond redetermination hearing before a neutral decision maker whether his prolonged detention is justified based on danger or flight risk. The nearly 10 months that the Petitioner has so far been detained have reached the point of unreasonableness. In absolute terms the length of time is unreasonable— it is more than 4 times the average length of detention (two times the average when the alien chooses to appeal), and longer than the six months

the Supreme Court suggested would be unreasonable in *Zadvydas*. *See Zadvydas, 533 U.S. at 701.*

### ADDITIONAL FACTS THAT SUPPORT PETITIONER'S ENTITLEMENT TO RELIEF ARE:

21. Petitioner 11/19/2018 removal proceedings was defective because the IJ failed considerably to inform him that he could apply for Cancellation of Removal and an adjustment of status under 8 U.S.C. §1255(a) (INA §245(a)).The requirement that the IJ inform an alien of his or her ability to apply for relief from removal is "Mandatory" and failure to so inform the alien [of his or her eligibility for relief from removal] is a denial of due process that invalidates the underlying  deportation proceeding see e.g., Moran-Enriquez v.INS, 884 F. 2d 420, 423 (9th cir. 1989). Further the Court stated that the change in the statute by the use of the general term "an alien" should be given full effect because congress had the objective of providing considerably more flexibility in the law with the 1960 amendment, the court concluded that §245 of the Act afforded relief to immigrants as well as non-immigrants.

22. The IJ failed to inform petitioner of his eligibility to seek waiver of inadmissibility pursuant     to section 212(i) of the Act. 8U.S.C. §1182(i) in order to remain with his United States Citizen spouse.

23. This matter arises in the Ohio southern district office, which is within the jurisdiction of the Sixth Circuit Courts of Appeals. That court has stated , "the most important single hardship factor may be the separation of the alien from family living in the United States, "and also,"[W]hen the BIA fails to give considerable, if not predominant, weight to the hardship that will result from family separation , it has abused its discretion. "Salcido-Salcido v. INS, 138 F.3d 1292, 1293 (9th cir. 1998)(citation omitted) see also Cerrillo-Perez v.INS, 809 F.2d 1419' 1424 (9th cir. 1987)).("We have stated in a series of cases that the hardship to the alien resulting from separation from family members may, in itself, constitute extreme hardship")(citation omitted). Separation of family will therefore be given the appropriate weight under the Sixth and Ninth Circuit law in the assessment of hardship factors in the present case.

24. Petitioner seeks relief from the deportation order because of the IJ's failure to advise him of his potential eligibility to adjust status and seek relief pursuant to *Matter of Gabryelsky,* 20 I & N. Dec. 750, 756 (B.I.A. 1993).

25. Mr. Wilson placed a "particular emphasis" on the immigration consequences of a Plea in deciding whether or not to accept his plea agreement, but his criminal counsel failed him considerably to advise him of his immigration consequences. His attorney's representation was deficient and unreasonable. Petitioner's decision making process was affected due to the counsel's deficient performance, this considerably influenced the outcome of the plea process. Petitioner was therefore prejudiced by the counsel Attorney James moneer Nasser deficient performance and lack of reasonable professional advise see, Lee 137 S. Ct. at 1967 (footnote omitted); therefore indicates that prejudice may lie where a petitioner demonstrates that counsels deficient performance affected his decision making process, and thus undermines confidence in the outcome of the plea process. Id. The holding in Padilla v. Kentucky, 559 U.S; 359, 368-69, 374, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). Here, counsel rendered constitutionally deficient performance where he told his client that he "did not have to worry about immigration status since he had been in the country so long" and that he "he has permanent resident status and so he will not be deported". Even though the law was clear that he would be eligible to be deported. Mr. Wilson is prejudice based on this incorrect advise, thus his constitutional due process right has been violated under the Fifth and Sixth Amendments of The Constitution of the United States of America.

26. Mr. Wilson argues that remand is necessary because the BIA's refusal to consider record evidence regarding the likelihood of future torture based on his family affiliation was improper. The Courts agrees. CAT's implementing regulations require the agency to consider "all evidence relevant to the possibility of future torture." 8 C.F.R. 1208.16(c)(3). CAT claims must be considered in terms of the aggregate risk of torture from all sources, and not as separate, divisible CAT claims. *Cole v. Holder*, <u>659 F.3d 762</u>, <u>775</u> (9th Cir.

2011) (stating that the consideration of the risk of torture must "take[e] into account all possible sources of torture"). Here, Mr Wilson's lack of  brief before the BIA on his status as a criminal deportee should not be construed as a waiver of any reliance on torture arising from family affiliation. Rather, once Mr. Wilson  appealed the IJ's denial of deferral of removal under CAT to the BIA, the BIA was required to consider "all evidence relevant to the possibility of future torture," 8 C.F.R. 1208.16(c)(3), including evidence based on family affiliation, in keeping with the regulation requiring the agency to evaluate a CAT claim in light of the aggregate risk of torture from all sources, *see Cole*, 659 F.3d at 775. Accordingly, the Court should grant and remand on this additional ground so that the BIA can evaluate claim for deferral of removal under CAT by considering the aggregate risk of torture arising from family affiliation together with the risk arising from his status as a criminal deportee.

## LEGAL BACKGROUND

27. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."' *Demore v Kim,* 538 U.S. 510,523 (2003) (quoting *Reno v Flores*, 507 U.S. 292,306(1993)). "Freedom from imprisonment–from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty" that the due process clause protects. *Zadvydas v Davis*, 533 U.S. 678, 690 (2001); *see also id*. at 718 (Kennedy, J., dissenting) ("Liberty under the Due Process Clause includes protection against unlawful or arbitrary personal restraint or detention.") This fundamental due process protection applies to all noncitizens, including both removable and inadmissible noncitizens. *See id.* at 721 ( Kennedy, J., dissenting) ("both removable and inadmissible aliens are entitled to be free from detention that is arbitrary or capricious").

28. Due process therefore requires "adequate procedural protections" to ensure that the government's asserted justification for physical confinement "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id*. at 690 (internal quotation marks omitted). In the

immigration context, the Supreme Court has recognized only two valid purposes for civil detention-to mitigate the risks of danger to the community and to prevent flight. *Id.*; *Demore*, 538 U.S. at 528.

29.  Following *Zadvydas* and *Demore*, every Circuit Court of Appeals to confront the issue has found either the immigration statues or due process require a hearing for noncitizens subject to unreasonably prolonged detention pending removal proceedings. *See Sopo v U.S. Attorney Gen.*, 825 F.3d 1199(11th Cir. 2016) (detention under 8 U.S.C. § 1226(c)); *Reid v Donelan*, 819 F. 3d 468 (1st Cir. 2016) (8 U.S.C. § 1226(c)); *Lora v Shanahan*, 804 F. 3d 601 (2d Cir. 2015) ( 8 U.S.C. § 1226(c)); *Rodriguez v Robins(Rodriguez III)*, 804 F. 3d 1060 (9th Cir, 2015) (8 U.S.C. § 1226(c) and 8 U.S.C. §1225(b)); *Diop v ICE/Homeland Sec.*, 656 F .3d 221 (3d Cir. 2011) (8 U.S.C. § 1226(c)); *Diouf v holder (Diouf II)*, 634 F. 3d 221 (3d Cir. 2011)( (8 U.S.C. § 1231(a)); *Ly v Hansen*, 351 F.3d 263( 6th Cir. 2003)( (8 U.S.C. § 1226(c)) (requiring release when mandatory detention exceeds a reasonable period of time).

30.  Recently, the Supreme Court held that the Ninth Circuit erred by interpreting Sections 1226(c) and 1225(b) to require bond hearings as a matter of statutory construction. *Jennings v Rodriguez*, U.S., 2018 WL 1054878 at *10 (Feb 27, 2018). Because the Ninth Circuit had not decided whether the Constitution itself requires bond hearings in cases of prolonged detention, the Court remanded for the Ninth Circuit to address the issue. *Id.* at *10. The majority opinion did not express any views on the constitutional question, and left the lower courts to address the issue in the first instance.

31. Due process requires that the government provide bond hearings to noncitizens facing prolonged detention. "The Due Process Clause foresees eligibility for bail as part of due process" because "[b]ail is basic to our system of law."*Id.* at *28 (Breyer, J., dissenting) (internal quotation and citations omitted). While the Supreme Court upheld the mandatory

detention of a noncitizen under Section 1226(c) in *Demore,* it did so based on the Petitioner's concession of deportability and the Court understanding that detentions under Section 1226(c) are typically "brief." *Demore,* 538 U.S. at 522 n.6, 528. Where a noncitizen has been detained for a prolonged period or is pursuing a substantial defense to removal or claim to relief, due process requires an individualized determination that such a significant deprivation of liberty is warranted. *Id.* at 532(Kennedy, J., concurring) ("individualized determination as to his risk of flight and dangerousness" may be warranted "if the continued detention became unreasonable or unjustified"). See also *Jackson v Indiana,* 406 U.S. 715,733(1972) (detention beyond the "initial commitment" requires additional safeguards); *McNeil v Dir., Patuxent* Inst., 407 U.S. 245, 249-50(1972) ("lesser safeguards may be appropriate" for "short term confinement"); *Hutto v Finney,* 437 U.S. 678, 685-86(1978) (in Eighth Amendment context, "the length of confinement cannot be ignored in deciding whether [a] confinement meets constitutional standards").

32. Consistent with this view, the federal courts have made clear that prolonged detention pending removal proceedings without bond hearing likely violates due process. *See supra; Jennings,* 2018 WL 10548878 at *37 (Breyer, J, dissenting) ("an interpretation of the statute before us that would deny bail proceedings where detention is prolonged would likely mean that the statute violates the constitution"). In addition, numerous Circuit and District Courts have expressly found that the Constitution requires bond hearings in cases of prolonged detention. *See, e.g., Diop,* 656 F.3d at 233; *Araujo-Cortes v Shanahan,* 35 F. Supp. 3d 533, 544-50 (S.D.N.Y. 2014); *Monestime v Reilly,* 704 F. Supp. 2d 453, 458-59(S.D.N.Y. 2010).

33. Although §1226(a) and §1226(c) are facially constitutional and authorize Petitioner's detention as a statutory matter, Petitioner's continuing detention must also be consistent with substantive and procedural due process principles as they are applied to him. *See Martinez v. Decker,* No.18-cv-6327(JMF), 2018 WL 5023946, at *4 (S.D.N.Y. Oct 17, 2018) ("*Jennings*

explicitly left open the question of what constitutional procedural protections are required."). Substantive and procedural due processes are related but distinct concepts: "The substantive issue involves a definition of the protected constitutional interest, as well as identification of the conditions under which competing state interests might overweigh it. The procedural issue concerns the minimum procedures required by the Constitution for determining that the individual's liberty interest actually is outweighed in a particular instance." *Washington v Harper* 494 U.S 210,220 (1990) (Internal quotations and alternations omitted).

34. It is well established (1) that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings [,]" *see Demore*, 538 U.S at 523 (Citation omitted), and (2) that noncitizens in such proceedings have a liberty interest in having their detention bear a "reasonable relation to the purpose for which" they were committed in the first place, see *Zadvydas*, 533 U.S at 690 (Citation omitted). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action," and court have taken great care " not to 'minimize the importance and fundamental nature' of the individual's right to liberty" *see Foucha v. Louisiana,* 504 U.S. 71, 80 (1992)(Citations omitted). In the immigration context, that fundamental right has limited somewhat in recognition of Congress's broad power to "make rules as to aliens that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522 (citations omitted). *Santosky*, 455 U.S. at 756) ... The balance of these interests, by itself, supports imposing the greater risk of error on the Government-Specifically, by allocating to it the burden of proof." 2018 WL 5023946 at *3

35. Even so, Congress's power has limits. Civil immigration detention may not, for example, continue if it is no longer reasonably related to valid immigration purposes, which include "ensuring the appearance of aliens at future immigration proceedings" and protecting the community from danger. *See Zadvydas*, 533 U.S at 690; *see also Demore*, 538 U.S at 528 (purpose of preventing flight); *Diop v ICE/Homeland Sec.*, 656 F.3d

221,231(3d cir.2011) (purpose of preventing flight); *abrogation on other grounds recognized by Borbot v Warden Hudson cty. Corr. Facility,* 906 F.3d 274, 278 (3d Cir.2018). Petitioner's procedural due process is on solid constitutional footing. *Cf. Flores,* 507 U.S. at 301-02 ( noting that due process includes a substantive component "which forbids the government to infringe on 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest."). There remains no doubt, that Mr. Wilson is entitled to adequate procedural safeguards to protect his right to be free from arbitrary or "unreasonable" civil detention. *See Sajous v Decker,* No. 18. CV-2447 (AJN), 2018 WL 2357266, at *10(S.D.N.Y. May 23 2018).

36. Numerous courts have addressed similar questions in the context of prolonged immigration detention under § 1226 (a) and (c) post *Jennings,* and the vast majority have concluded that the government must provide an individualized bail hearing and prove by clear and convincing evidence that the detention remains necessary. *See e.g. Sajous,*2018 WL 2357266, at *8; *Perez v Decker,* No 19-CV-5279 (VEC), 2018 WL 3991497, at *6(S.D.N.Y. Aug 20, 2018); *Hernandez* 2018 WL 3579108, at *3; *Brissett v. Decker,* 324 F.Supp.3d 444, 455 (S.D.N.Y.2018); *Lett v Decker,* No. 18-CV-4302 (JCM), 2018 WL 4931544, at *6(S.D.N.Y. Oct 10, 2018); *Dukuray v Decker,* No 18-CV-2898(VB), 2018 WL 5292130, at *5(S.D.N.Y.Oct.25,2018); *Brevil,* 2018 WL 5993731, at *5; *Hechavarria v sessions,* No. 15-CV-1058, 2018 WL 5776421, at *8(W.D.N.Y. Nov 2,2018).

37. District Courts outside this district have distilled from the relevant case law several factors for assessing when detention in the absence of a bond hearing violates procedural due process: "(1) the length of time the alien has been detained; (2) whether the alien is responsible for the delay; (3) whether the alien has asserted defenses to removal; (4) whether the alien's civil immigration detention exceeds the time the alien spent in prison for crime that rendered him removable; and (5) whether the facility for the civil

immigration detention is meaningfully different from penal institution for criminal detention." *Hernandez* 2018 WL 3579108, at *7(citing *Sajous*,2018 WL 2357266, at *10-11); *see Brissett v Decker*, 324 F. Supp.3d 444, 432-53 (S.D.N.Y. 2018); *Perez v Decker*, No.18-CV-5279(VEC), 2018 WL 3991497, at *4 & n.10 (S.D.N.Y. Aug 20, 2018); *Lett v Decker*, No 18-CV-4302(JCM), 2018 WL 4931544, at *5(S.D.N.Y. Oct. 10 2018); *Dukuray v Decker*, No.18-CV-2898(VB), 2018 WL 5292130, at *4(S.D.N.Y. Oct 25 2018).

38. Detention without a bond hearing is unconstitutional when it exceeds six months. See Demore, 538 U.S. at 529-30 (upholding only "brief" detentions under section 1226(c), which last" roughly a month and half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal"); Zadvydas, 533 U.S. at 700("Congress previously doubted the constitutionality of detention for more than six months").

39. The recognition that six months is a substantial period of confinement—and is the time after which additional process is required to support continue incarceration—is deeply rooted in our legal tradition. With few exceptions, "in the late18th century in America crimes triable without a jury were for the most part punishable by no more than a six-month prison term...." Duncan v. State of La., 391 U.S. 145, 161 & n.34 (1968). Consistent with this tradition, the Supreme Court has found six months to be the limit of confinement for a criminal offense that a federal court may impose without the protection afforded by jury trial. Cheff v. Schnackenberg, 384 U.S. 373, 380 (1966) (plurality opinion). The Court has also looked to six months as a benchmark in other contexts involving civil detention. See McNeil v. Dir., Patuxent Inst., 407 U.S.245, 249, 250-52 (1972) (recognizing six months as the outer limit for confinement without individualized inquiry for civil confinement). The Court has likewise recognized the need for bright line constitutional rules in other areas of law. See Maryland v. Shatzer, 559 U.S 98, 110 (2010) (14 days for re-interrogation following invocation of Miranda rights); Cty. Of Riverside v. McLaughlin, 500 U.S. 44, 55-56 (1991)(48 hours for probable cause hearing).

40.  Even if a bond hearing is not required after six months in every case, at a minimum, due process requires a bond hearing after detention has become unreasonably prolonged. See Diop, 656 F.3d at 234. Courts that apply a reasonableness test have considered three main factors in determining whether detention is reasonableness. First, courts have evaluated whether the noncitizen has raised a "good faith" challenge to removal---that is "legitimately raised" and presents "real issues." Chavez-Alvarez v. Warden York Cty. Prison, 783 F. 3d 469, 476 (3rd. cir. 2015). Second, reasonableness is a "function of the length of the detention, " with detention presumptively unreasonable if it lasts six months to a year. Id. At 477-78; accord Sopo, 825 F.3d at1217-18. Third, courts have considered the likelihood that detention will continue pending future proceedings. Chavez-Alvarez, 783 F.3d at478 (finding detention unreasonable after ninth months of detention, when the parties could "have reasonably predicted that Chavez- Alvarez's appeal would take a substantial amount of time , making his already lengthy detention considerably longer"): Sopo, 825 F.3d at 128; Reid, 819 F. 3d at 500.

41. At a bond hearing, due process requires certain minimal protections to ensure that a noncitizen's detention is warranted: the government must bear the burden of proof by clear and convincing evidence to justify continued detention, taking into consideration available alternatives to detention; and if government cannot meet its burden, the noncitizen's ability to pay a bond must be considered in determining the appropriate conditions of release.

42. To justify prolonged immigration detention, the government must bear the burden of proof by clear and convincing evidence that the noncitizen is a danger or flight risk. See Singh v. Holder, 638 F.3d 1196, 1203 (9th cir.2011). Where the Supreme Court has permitted civil detention in the other contexts, it has relied on the fact that the Government bore the burden of proof at least by clear and convincing evidence. See United States v. Salerno,

481 U.S. 739, 750, 752 (1978)( upholding pre-trial detention where "full-blown adversary hearing, "requiring "clear and convincing evidence" and "neutral decision maker"): Foucha v. Louisiana, 504 U.S. 71, 81-83 (1992) (Striking down civil detention scheme that placed burden on the detainee); Zadvydas, 533 U,.S. at 692( finding post-final-order custody review procedures deficient because, inter alia, they placed burden on detainee).

43. The requirement that the government bear the burden of proof by clear and convincing evidence is also supported by application of the three- factor balancing test from the *Mathews v Eldridge,* 424 U.S. 319, 335(1976). First, prolonged incarceration deprives noncitizens of a "profound" liberty interest. *See Diouf II,* 634 F. 3d at 1091-92(9th Cir. 2011). Second, the risk of error is great where the government is represented by trained attorneys and detained noncitizens are often unrepresented and frequently lack English proficiency. *See Santosky v Kramer,* 455 U.S. 745,763(1982) (requiring clear and convincing evidence at parental termination proceedings because "numerous factors combine to magnify the risk of erroneous fact finding" including that "parents subject to termination proceedings are often poor, uneducated ,or members of minority groups" and "[t]he State's attorney usually will be expert on the issues contested"). Moreover, detainees are incarcerated in prison-like conditions that severely hamper their ability to obtain legal assistance, gather evidence, and prepare for a bond hearing. See infra 39. Third, placing the burden on the government imposes minimal cost or inconvenience, as the government has access to the citizen's immigration records and other information that it can use to make its case for continued detention.

44. Due process also requires consideration of alternatives to detention. The primary purpose of immigration detention is to ensure a noncitizen's appearance during removal proceedings. *Zadvydas,* 533 U.S. at 697. Detention is not reasonably related to this purpose if there are alternative conditions of release that could mitigate risk of flight. *See Bell v Wolfish,* 441 U.S. 520.538(1979). ICE's alternatives to detention program-the Intensive

Supervision Appearance Program(ISAP)-has achieved extraordinary success in ensuring appearance at removal proceedings, reaching compliance rates close to 100 percent. *Hernandez v Sessions*, 972 F .3d 976,991 (9th Cir. 2017) (observing that ISAP"resulted in a 99% attendance rate to all EOIR hearings and a 95% Attendance rate at final hearings"). It follows that alternatives to detention must be considered in determining whether prolonged incarceration is warranted.

*45.* Due process likewise requires consideration of a noncitizen's ability to pay a bond. "Detention of an indigent 'for inability to post money bail' is impermissible if the individual's 'appearance at trial could reasonably be assured by one of the alternate forms of release."' *Id.* at 990 (quoting *Pugh v Rainwater*, 572 F.2d 1053, 1058 (5th Cir. 1978) (en banc)). It follows that-in determining the appropriate conditions of release for immigration detainees-due process requires. "consideration of financial circumstances and alternative conditions of release" to prevent against detention based on poverty. *Id.*

46. Evidence about immigration detention and the adjudication of removal cases provide further support for the due process right to a bond hearing in cases of prolonged detention.

47. Each year, thousands of noncitizens are incarcerated for lengthy periods pending the resolution of their removal proceedings. *See Jennings*, 2018 WL 1054878 at *27 (Breyer, J., dissenting). Among a class of immigration detainees in the Central District of California held for at least six months ("*Rodriguez* class"), the average length of detention was over a year, with many people held far longer. In numerous cases, noncitizens are incarcerated for years until winning their immigration cases. *Id.* (identifying cases of noncitizens detained for 813, 608, and 561 days until winning their cases). For noncitizens who have some criminal history, their immigration detention

often dwarfs the time spent in criminal custody, if any. *Id.* ("between on-half and two-thirds of the class served sentences less than six months").

48. Noncitizens are detained for lengthy periods because they pursue meritorious claims. Among the *Rodriguez* class, 40 percent of noncitizens subject to Section 1226(c) won their cases and two-third of asylum seekers subject to Section 1225 won asylum. *See id.* Detained noncitizens are able to succeed at these dramatically high rates despite the challenges of litigating in detention, particularly for the majority of detainees who lack counsel. *See Ingrid V. Eagly & Steven Shafer, A National Study of Access to Counsel in Immigration Court,* 164 U. Pa. L. Rev. 1, 36 (2015) (reporting government data showing that 86% of immigration detainees lack counsel).

49. Immigration detainees face severe hardships while incarcerated. Immigration detainees are held in lock-down facilities, with limited freedom of movement and access to their families: "the circumstances of their detention are similar, so far as we can tell, to those in many prisons and jails." *Jennings,* 2018 WL 1054878 at *28 (Breyer, J., dissenting); *accord Chavez-Alvarez,* 783 F.3d at 478; *Ngo v. INS,* 192 F.3d 390, 397-98 (3d Cir. 1999); *Sopo,* 825 F.3d at 1218, 1221. "and in some cases the conditions of their confinement are inappropriately poor." *Jennings*, 2018 WL 1054878 at *28 (Breyer, J., dissenting) (citing Dept. of Homeland Security (DHS), Office of Inspector General (OIG), *DHS OIG Inspection Cites Concerns With Detainee Treatment and Care at ICE Detention Facilities* (2017) (reporting in-stances of invasive procedures, substandard care, and mistreatment, e.g., indiscriminate strip searches, long waits for medical care and hygiene products, and, in the case of one detainee, a multiday lock down for sharing a cup of coffee with another detainee)).

50. The Immigration judge also failed to adequately consider whether alternatives to detention could protect the community from any continued dangerousness petitioner might pose. Obregon 2017 WL 1407889, *7

(critiquing the "little attention" given to whether "the least restrictive alternative was not further incarceration") sales, 2017 WL 56855827, at *7 (ordering immigrant released on conditions "such as ankle monitor and reporting requirements").  Due process requires the government to show by clear and convincing evidence that an immigrant is a flight risk or danger to the community at the time of the bond hearing, Singh, 638 F. 3d at 1208.

 "Although an alien's criminal record is surely relevant to a bond assessment...Criminal history alone will not always be sufficient t justify denial of bond on the basis of dangerousness.  Rather, the recency and severity of the offenses must be considered." Singh, 638 F.3d at 1206. {293 F. Supp. 3d 1030} Moreover, "not every criminal record would support a finding of dangerousness. The Immigration Judge must also consider whether the immigrant's circumstances have changed such that criminal conduct is now less likely. Id. at 1205 ("[T]he BIA focused on Singh's prior convictions for petty theft, receiving stolen property and substance abuse. Under a clear and convincing evidence standard, the BIA might conclude that Singh's largely nonviolent prior bad acts do not demonstrate a propensity for future dangerousness, in view of evidence showing that his drug use, which was the impetus for his previous offenses, has ceased."). The clear and convincing evidence standard "is a high burden and must be demonstrated in fact." Obregon, 2017 U.S. Dist. LEXIS 60552, 2017 WL 1407889, at *7; see also 2017 U.S. Dist. LEXIS 60552, [WL] at 6 (looking to the criminal court which made the underlying determination to release the immigrant for guidance in assessing whether the Government met its burden).

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

## VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION

51. Petitioner re-alleges and incorporates by reference the paragraphs above.

52. The Due Process Clause of the Fifth Amendment forbids the government from depriving any "person" of liberty "without due process of law." U.S. Const. amend, V.

53. To justify Petitioner's ongoing prolonged detention, due process requires that the government establish, at an individualized hearing before a neutral decision maker, that Petitioner's detention is justified by clear and convincing evidence of flight risk and danger, even after consideration whether alternatives to detention could sufficiently mitigate that risk.

54. For these reasons, Petitioner's ongoing prolonged detention without a redetermination violates due process.

### SECOND CLAIM FOR RELIEF

## VIOLATION OF THE EIGHTH AMENDMENT TO THE U.S. CONSTITUTION

55. Petitioner re- alleges and incorporates by reference the paragraphs above.

56. The Eighth Amendment prohibits "[e]xcessive bail." U.S. Const. amend. VIII.

57. The Government's categorical denial of bail to certain noncitizens violates the right to bail encompassed by the Eighth Amendment. *See Jennings,* 2018 WL 1054878 at *29 (Breyer, J, dissenting).

58. For these reasons, Petitioner's ongoing prolonged detention without a bond redetermination hearing violates the Eighth Amendment.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1) Assume jurisdiction over this matter;

2) Issue a Writ of Habeas Corpus; hold a hearing before this Court if warranted; determine that Petitioner's detention is not justified because the government has not established by clear and convincing evidence that Petitioner presents a risk of flight or danger in light of available alternatives to detention; and order Petitioner's release, with appropriate conditions of supervision if necessary, taking into account Petitioner's ability to pay a bond.

3) In the alternative, issue a Writ of Habeas Corpus and order Petitioner's immediate release unless the Defendants schedule a redetermination hearing before an Immigration Judge where: (1) to continue detention, the government must establish by clear and convincing evidence that Petitioner presents a risk of flight or danger, even after consideration of alternatives to detention that would mitigate any risk that Petitioner's release would present; and (2) if the government cannot meet its burden, the Immigration Judge order Petitioner's release on appropriate conditions of supervision, taking into account Petitioner's ability to pay bond.

4) Issue a declaration that Petitioner's ongoing detention violates the Due Process Clause of the Fifth Amendment and the Eighth Amendment;

5) Order proceedings terminated because the notice to appear in this case failed to include the time and date of the removal proceedings, a valid charging document was never filed. Pursuant to 8 C.F.R. §1003.14, the failure to file a valid charging document means that the immigration court does not have jurisdiction to initiate Petitioner's removal proceedings.

6) Grant such further relief as the Court deems just and proper.

DATED 06/04/2019

Respectfully submitted,

KOKO WLEH WILSON

Petitioner, *Pro se*

# UNITED STATES DISTRICT COURT
# FOR THE OHIO SOUTHERN DISTRICT

KOKO WLEH WILSON
Petitioner, Pro Se,

v.

WILLIAM P. BARR ,Attorney General of the
United States; KIRSTJEN M. NIELSEN, Secretary of
the U.S. Department of Homeland Security;
RONALD VITIELLO, Director of U.S. Immigration
and Customs Enforcement; JEFFREY D. LYNCH,
Denver Field Office Director for Enforcement and
Removal Operations, U.S. Immigration and
Customs Enforcement; JOHNNY CHOATE,
Warden, Denver Contract Detention Facility

Respondents.

Case No.

MOTION FOR APPOINTMENT

OF COUNSEL PURSUANT TO 18

U.S.C. §3006A

Petitioner KOKO WILSON has filed a petition for writ of habeas corpus
under 28 U.S.C. §2241 challenging Petitioner's indefinite detention by
Respondents.  Petitioner was detained by Immigration and Customs
Enforcement (ICE) on  July 11. 2018.  Petitioner has remained in ICE custody
since that date.  An Immigration Judge ordered Petitioner removed and
Petitioner's removal order became final on February ,  2018  but ICE has been
unable to remove Petitioner.

In *Zadvydas v. Davis*, the Supreme Court held that the immigration
statute 8 U.S.C. §1231(a)(6) does not allow ICE to detain a noncitizen
indefinitely while attempting to carry out removal.  533 U.S. 678, 689 (2001).
After six months of presumptively-reasonable detention, if the noncitizen

provides good reason to believe that removal is not reasonably foreseeable, the burden shifts to the government to rebut that showing. *Id.* at 701.

Petitioner moves the Court to appoint counsel to represent Petitioner in this case. The Court may appoint counsel in habeas action when the "interests of justice so require." 18 U.S.C. §3006A(a)(2)(B). Here, Petitioner has a strong chance of success on the merits because Petitioner has been held for longer that six months since being ordered removed and petitioner's country still refuses to accept him. However, given the complexity of the law on immigration detention and Petitioner's status as a detained immigrant, Petitioner would have great difficulty presenting the case without the assistance of counsel. For these reasons, Petitioner respectfully requests that the Court appoint counsel.

Date:06/04/2019                                    Signature:_____

                                                   Koko wleh wilson

                                                   Petitioner, Pro se.

**KOKO WLEH WILSON**
**GEO AURORA DETENTION CENTER**
**3130 NORTH OAKLAND STREET**
**AURORA, COLORADO 80010**                                    **DETAINED**
**A088319144**

### UNITED STATES DISTRICT COURT
### FOR THE OHIO SOUTHERN DISTRICT

| | |
|---|---|
| **KOKO WLEH WILSON**<br>**Petitioner, Pro Se,**<br><br>**V.**<br><br>**WILLIAM P. BARR ,Attorney General of the**<br>**United States; KIRSTJEN M. NIELSEN, Secretary of**<br>**the U.S. Department of Homeland Security;**<br>**RONALD VITIELLO, Director of U.S. Immigration**<br>**and Customs Enforcement; JEFFREY D. LYNCH,**<br>**Denver Field Office Director for Enforcement and**<br>**Removal Operations, U.S. Immigration and**<br>**Customs Enforcement; JOHNNY CHOATE,**<br>**Warden, Denver Contract Detention Facility**<br><br>    **Respondents.** | **APPLICATION TO PROCEED IN**<br>**INFORMA PAUPERIS** |

### APPLICATION TO PROCEED IN FORMA PAUPERIS

I, KOKO WLEH WILSON, declare under perjury that I am the petitioner in the
above entitled case and that the information I offer throughout this application
is true and correct.

I offer this application in support of my request to proceed without being
required to prepay the full amount of fees, costs or give security.  I state that

because of my poverty I am unable to pay the costs of this action or give security, and I believe that I am entitled to relief.

Dated this ___4th___ day of ___June___ 2019.

Respectfully Submitted,

KOKO WLEH WILSON

KOKO  WLEH WILSON

GEO AURORA DETENTION CENTER                    DETAINED

3130 NORTH OAKLAND STREET

AURORA, COLORADO 80010

Petitioner, In Pro Se


IN THE UNITED STATES DISTRICT COURT
FOR THE OHIO SOUTHERN DISTRICT

| | |
|---|---|
| In the matter of | Case No. |
| KOKO WLEH WILSON | |
| Petitioner, Pro Se | |
| V. | APPLICATION TO PROCEED INFORMA PAUPERIS |
| WILLIAM P. BARR, Attorney General of the United States; KIRSTJEN M. NIELSEN, Secretary of the U.S. Department of Homeland Security; ERIC BONNAR, Field Office Director for Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; JOHNNY CHOATE, Warden, AURORA, Detention Facility | |
| Respondents | |

**<u>AFFIDAVITS IN SUPPORT OF REQUEST INFORMA PAUPERIS</u>**

I, KOKO WLEH WILSON, am the Petitioner in the above entitled case. In support of my motion to proceed without being required to prepay fees or costs or give security therefore, I State that because of poverty I am unable to pay the costs of said proceedings or give security therefore; that I believe I am entitled to redress. I declare that the responses which I have made below are true.

1. Are you presently employed?   —NO—

   A. If the answer is yes, state the amount of your salary per month and give the name and address of your employer. —NONE—
   B. If the answer is no, state the date of last employment and amount of salary per month which you received.

2. Have you received within the past twelve months any money from any of the following sources?
   A. Business, profession, or form of self-employment? YES   NO
   B. Pensions, annuities, or life insurance payments?   YES   NO
   C. Rent payments, interest or dividends?   YES   NO
   D. Gifts or Inheritances?   YES   NO
   E. Any other sources?   YES   NO

   If the answer to any of the above is yes, describe each source of money and state the amount received from each during the past twelve months.
   Family funds

3. Do you own any cash or do you have money in a checking or savings account, which includes any funds in prison accounts?   YES   NO
   If yes, state the total value owned.

4. Do you own any real estate, stock, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)? YES / NO
If the answer is yes, describe the property and state its approximate value.

5. List the Persons who are dependent upon you for support; state your relationship to those persons; and indicate how much you contribute towards their support. — NONE —

I understand that a false statement or answer to any questions in these affidavits will subject me to penalties for perjury. I declare under penalty that the foregoing is true and correct.

Dated: 06/04/2019

Respectfully Submitted,

KOKO WLEH WILSON

PETITIONER, PRO SE

## CERTIFICATE OF SERVICE

**STATE OF COLORADO, COUNTY OF ARAPAHOE**

I KOKO WLEH WILSON, petitioner in the attached matter, hereby certify that on JUNE 04,2019 served the foregoing WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. §2241 On counsel of government , by placing a true copy thereof in a sealed postage paid, First Class United States Mail envelope, addressed to:

**Office of the Chief Counsel**

**U.S Department of Homeland Security**

**U.S.  Immigration and Customs Enforcements**

**801 WEST SUPERIOR AVENUE**

**CLEVELAND, OHIO 44113.**

So declared under penalty of perjury under the laws of the United States.

_____

**KOKO WLEH WILSON**

**Petitioner, PRO SE**

## CERTIFICATE OF SERVICE

**STATE OF COLORADO, COUNTY OF ARAPAHOE**

I KOKO WLEH WILSON, petitioner in the attached matter, hereby certify that on JUNE 04,2019 served the foregoing WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. §2241 On counsel of government , by placing a true copy thereof in a sealed postage paid, First Class United States Mail envelope, addressed to:

**Office of the Chief Counsel**

**U.S Department of Homeland Security**

**U.S. Immigration and Customs Enforcements**

**Aurora Detention Center**

**3130 North Oakland Street**

**AURORA, CO 80010**

So declared under penalty of perjury under the laws of the United States.

KOKO WLEH WILSON

Petitioner, PRO SE